**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

MELVIN BROWN,

                            Plaintiff,

         v.                             No. 9:15-CV-1515
                                         (LEK/CFH)

S. DUBOIS, Correctional Officer;
D. PADGETT, Correctional Officer;
and KOLAO, D.S.P. Superintendent,

                          Defendants.[1]

_____

**APPEARANCES:**              **OF COUNSEL:**

MELVIN BROWN
04-A-0155
Plaintiff pro se
Coxsackie Correctional Facility
P.O. Box 999
Coxsackie, New York 12051

HON. ERIC T. SCHNEIDERMAN     SHANNAN COLLIER KRASNOKUTSKI, ESQ.
Attorney General for the           MELISSA A. LATINO, ESQ
State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**CHRISTIAN F. HUMMEL,**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[2]

     Plaintiff <u>pro se</u> Melvin Brown, an inmate who was, at all relevant times, in the custody of

---

    [1]       Dubois and Padgett are the only remaining defendants. In March 2017, Kolao was terminated as a defendant. Dkt. No. 53. A review of the docket reveals that this individual was misidentified as "Kenneth Kolao." The correct spelling is "Kenneth Colao." Dkt. No. 18-1 at 2. The Clerk of the Court is directed to amend the docket accordingly.

    [2]       This matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

the New York Department of Corrections and Community Supervision ("DOCCS"), brings

this action pursuant to 42 U.S.C. § 1983 alleging that defendants Correction Officers S.

Dubois ("Dubois") and D. Padgett ("Padgett") violated his constitutional rights under the

Eighth Amendment.[3]  Presently before the Court is defendants' motion for summary

judgment.  Dkt. No. 37.   Plaintiff opposed the motion and cross moved for summary

judgment.  Dkt. Nos. 40, 44.  For the following reasons, it is recommended that defendants'

motion be granted in part and denied in part, and plaintiff's cross motion be denied.

## I.  Background

### A.  Facts[4]

---

[3]     As discussed infra, all allegations in plaintiff's complaint were dismissed except for plaintiff's
Eighth Amendment claims against Dubois and Padgett.

[4]     Local Rule 7.1(a)(3) states:

Summary Judgment Motions

Any motion for summary judgment shall contain a Statement of Material Facts.  The Statement of
Material    Facts shall set forth, in numbered paragraphs, each material fact about which the moving
party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the
record where the fact is established. The record for purposes of the Statement of Material Facts
includes the pleadings, depositions, answers to interrogatories, admissions and affidavits.

The opposing party shall file a response to the Statement of Material Facts. The non-movant's
response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of
the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific
citation to the record where the factual issue arises. The non-movant's response may also set forth
any additional material facts that the non-movant contends are in dispute. *Any facts set forth in the
Statement of Material Facts shall be deemed admitted unless specifically controverted by the
opposing party.*

N.D.N.Y. Local Rule 7.1(a)(3).

Defendants filed a Statement of Material Facts.  Plaintiff, however, has not properly responded but
admits the facts contained in certain paragraphs of defendants' Statement of Material Facts.  The facts set
forth in this section are taken from: (1) defendants' Statement of Material Facts; (2) plaintiff's deposition
transcript; and (3) defendants' affidavits.  Dkt. No. 37.  To the extent that the "facts" asserted by defendants
in the Statement of Material Facts are supported by the record, the Court will consider them in the context of
the within motion.  The facts recited are for the relevant time period referenced in the complaint.

The facts are reviewed in the light most favorable to plaintiff as the non-moving party.[5]

See subsection III (A) infra. At the time of the incident described in the complaint, plaintiff was confined at Eastern Correctional Facility ("Eastern C.F."). Dkt. No. 37-21 at 15.[6] Padgett, who had eleven years of experience, was employed by DOCCS at Eastern C.F. and was working on July 3, 2014. Dkt. No. 37-1 at 1. Dubois, who had eight years of experience, was employed by DOCCS at Eastern C.F. and was also working on July 3, 2014. Dkt. No. 37-6 at 1. Prior to July 3, 2014, defendants had no contact with plaintiff. Dkt. Nos. 37-1 at 1; 37-6 at 1; 37-21 at 12.

On July 3, 2014, a use of force incident involving plaintiff, Dubois, and Padgett occurred at Eastern C.F. while the inmates in 9-company were preparing for evening chow. Dkt. No. 37-21 at 22. Padgett claims that plaintiff refused his initial order to close his gate, but reluctantly complied when Padgett gave a second direct order. Dkt. No. 37-1 at 2. Padgett alleges that as plaintiff was walking with his company to chow, he stopped plaintiff for counseling regarding his refusal to comply with orders. Id. According to Padgett, plaintiff became agitated and hostile. Id. Padgett directed plaintiff to place his hands on the wall for a pat frisk. Id.

Padgett and Dubois contend that while Padgett was conducting the pat frisk, plaintiff

---

[5]    The record herein contains few undisputed facts. Plaintiff and defendants disagree on many of the events that transpired and provide conflicting accounts of the circumstances surrounding the incidents. In light of the procedural posture of the case, the following recitation is derived from the record now before the Court, with all inferences drawn and ambiguities resolved in non-moving party's favor. Terry v. Ashcroft, 336 F.3d 128, 137 (2d Cir. 2003). To the extent that plaintiff's deposition testimony is at odds with his submissions, the Court will follow the rule that "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." Raskin v. Wyatt Co., 125 F.3d 55, 63 (2d Cir. 1997).

[6]    Citations to page numbers refer to the pagination generated by CM/ECF, the Court's electronic filing system, not the page numbers provided by the parties.

"sprang away from the wall." Dkt. Nos. 37-1 at 2; 37-6 at 2. Padgett attempted to push plaintiff towards the wall and wrapped his arms around Brown's torso. Id. Padgett and Dubois claim that plaintiff "broke [Padgett's] hold, turned to his right, and punched C.O. Dubois in the face with his right fist." Id. Padgett and Dubois used a body hold to force plaintiff to the ground. Id. While on the ground, plaintiff continued to struggle and refused commands to stop resisting. Dkt. Nos. 37-1 at 2; 37-6 at 2. Padgett admits that he struck plaintiff several times with a closed fist and was able to gain control of plaintiff's right arm. Id. Defendants applied restraints, and plaintiff submitted. Id.

By contrast, plaintiff maintains that when he was called to chow, he promptly exited his gate and refused only Padgett's order to close another inmate's gate. Dkt. No. 37-21 at 22-23. Plaintiff contends that Padgett told him to "wait on the side" while the company walked to chow. Id. Plaintiff claims that Padgett put his hands in plaintiff's face and directed plaintiff to empty his pockets and place his hands on the wall. Id. at 23. Plaintiff complied with Padgett's orders. Id. At that time, three or four other officers, including Dubois, arrived to assist Padgett. Dkt. No. 37-21 at 24; Dkt. No. 37-6 at 2.

Plaintiff further disputes defendants' account, claiming that he never attempted to move off of the wall, did not hit Dubois or Padgett, and did not resist. Dkt. No. 37-21 at 27-30. Rather, plaintiff maintains that, while he was being searched, Padgett yelled, "Brown is coming off the wall" and slapped him in the face. Id. at 26. Plaintiff claims that Padgett and Dubois threw him to the ground, then repeatedly kicked him in his stomach and punched him in the head and face. Id. at 26-29. Plaintiff did not "strike back" but admits that he cursed at defendants. Id. at 27-30. Plaintiff was handcuffed and taken to the Special Housing Unit ("SHU"). Dkt. No. 37-21 at 35-36.

4

After the incident, plaintiff was examined by Nurse Henry Hamberg ("Hamberg").[7] Dkt. No. 37-21 at 36-37. Hamberg took photographs and prepared an injury report that incorporated a statement from plaintiff. Id. Plaintiff wrote, "I was put on the wall to be pat frisk [sic] and the officer push [sic] my face to the wall." Id. at 37. Plaintiff did not make any reference to being tossed to the ground. Id. at 38. Plaintiff contends that as a result of the incident, his mouth was bleeding and his tooth was "knocked loose." Dkt. No. 37-21 at 33. Plaintiff extracted the tooth himself and threw it in the garbage. Id. at 33-36. Plaintiff also sustained bruising to his ribs and legs. Id. at 34.

On July 3, 2014, Padgett prepared a misbehavior report charging plaintiff with assault, threats, violent conduct, creating a disturbance, refusing a direct order, interference with employees, refusing a search or frisk, and movement violations. Dkt. No. 37-1 at 4; Dkt. No. 37-5 at 2. On July 7, 2014, Colao presided over a Tier III Disciplinary Hearing related to the misbehavior report. Dkt. No. 37-8 at 2. Plaintiff was found guilty of the charges and, as a result, was confined to the SHU at Upstate Correctional Facility ("Upstate C.F.") for 270 days. Dkt. No. 37-11 at 16, 56. Plaintiff was charged with assault in the second degree and pleaded guilty to a lesser charge of harassment in the second degree. Dkt. No. 37-21 at 56-57.

## B. Procedural History

On December 22, 2105, plaintiff filed his complaint in the within action. Dkt. No. 1 ("Compl.). Following initial review of plaintiff's complaint, the Court directed defendants to

---

[7] Hamberg is not a defendant herein.

respond.  Dkt. No. 10.  On April 29, 2016, Dubois and Padgett filed an answer to the complaint and Colao moved for dismissal pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 12(b).  Dkt. Nos. 23, 24.  The Court granted Colao's motion and dismissed plaintiff's Fourteenth Amendment claims related to his disciplinary hearing.  Dkt. No. 53.  On September 12, 2016, plaintiff appeared at a deposition.  Dkt. No. 37-11.  On January 4, 2017, defendants filed the within motion pursuant to Fed. R. Civ. P. 56 seeking judgment as a matter of law with respect to plaintiff's Eighth Amendment claim.  Dkt. No. 37.  Plaintiff opposes the motion and cross moves for summary judgment.  Dkt. Nos. 40, 44.

## II.  Discussion[8]

Plaintiff contends that Padgett and Dubois used excessive force during the July 3, 2014 incident in violation of the Eighth Amendment.  See generally Comp.  Defendants move for summary judgment arguing that plaintiff failed to exhaust his administrative remedies or, in the alternative, defendants are entitled to summary judgment on plaintiff's Eighth Amendment claims.  See generally Dkt. No. 37-22.  Plaintiff cross moves for summary judgment, restating the allegations set forth in his complaint.  See Dkt. No. 40.

### A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact, it was supported by affidavits or other suitable evidence, and the moving party is entitled to judgment as a matter of law.  The moving party bears the burden of

---

[8]    All unpublished decisions cited herein, unless otherwise indicated, have been provided to plaintiff with his copy of this Report-Recommendation and Order.

demonstrating the absence of disputed material facts by providing the court with portions of

pleadings, depositions, and affidavits which support the motion. FED. R. CIV. P. 56(c);

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Facts are material if they may affect the

outcome of the case as determined by substantive law. Anderson v. Liberty Lobby, Inc.,

477 U.S. 317, 248 (1986). All ambiguities are resolved and all reasonable inferences are

drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir.

1997).

The party opposing the motion must set forth facts showing a genuine issue for trial.

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). For a

court to grant a motion for summary judgment, it must be apparent that no rational finder of

fact could find in favor of the non-moving party. Gallo v. Prudential Residential Servs., Ltd.

P'ship, 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d

Cir. 1988).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford

the non-movant special solicitude. See Triestman v. Federal Bureau of Prisons, 470 F.3d

471, 477 (2d Cir. 2006). As the Second Circuit has stated repeatedly,

> [t]here are many cases in which we have said that a pro se litigant is
> entitled to "special solicitude," . . . that a pro se litigant's submissions
> must be construed "liberally,". . . and that such submissions must be read
> to raise the strongest arguments that they "suggest," . . . . At the same
> time, our cases have also indicated that we cannot read into pro se
> submissions claims that are not "consistent" with the pro se litigant's
> allegations, . . . or arguments that the submissions themselves do not
> "suggest," . . . that we should not "excuse frivolous or vexatious filings by
> pro se litigants," . . . and that pro se status "does not exempt a party from
> compliance with relevant rules of procedural and substantive law.

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d

185, 191-92 (2d Cir. 2008).

When considering cross-motions for summary judgment, a court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Hotel Employees & Rest. Employees Union, Local 100 of N.Y. v. Dep't of Parks & Recreation, 311 F.3d 534, 543 (2d Cir.2002) (quoting Heublein, Inc. v. U.S., 996 F.2d 1455, 1461 (2d Cir.1993)). "[N]either side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it . . . [and] a district court is not required to grant judgment as a matter of law for one side or the other." Heublein, 996 F.2d at 1461.

## B. Eleventh Amendment

Defendants move for summary judgment and dismissal of plaintiff's claims against defendants in their official capacities.[9] Dkt. No. 37-22 at 30. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "[D]espite the limited terms of the Eleventh Amendment, a federal court [cannot] entertain a suit brought by a citizen against his [or her] own State." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98 (1984) (citing Hans v. Louisiana, 134 U.S. 1, 21 (1890)). Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or

---

[9]     Plaintiff has not responded to this argument.

8

departments is proscribed by the Eleventh Amendment.  <u>Halderman</u>, 465 U.S. at 100.

Section 1983 claims do not abrogate the Eleventh Amendment immunity of the states.  <u>See</u>

<u>Quern v. Jordan</u>, 440 U.S. 332, 340-41 (1979).

A suit against a state employee in his or her official capacity is considered to be a suit

against the entity that employs the official.  <u>Farid v. Smith</u>, 850 F.2d 917, 921 (2d Cir. 1988)

(citing <u>Edelman v. Jordan</u>, 415 U.S. 651, 663 (1974)).  "Thus, while an award of damages

against an official in his personal capacity can be executed only against the official's

personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity

suit must look to the government entity itself," rendering the latter suit for money damages

barred even though asserted against the officer rather than the employer.  <u>Kentucky v.</u>

<u>Graham</u>, 473 U.S. 159, 166 (1985).  Here, because plaintiff seeks monetary damages

against defendants for acts occurring within the scope of their duties, the Eleventh

Amendment bar applies and serves to prohibit claims for monetary damages against them

in their official capacity.

Accordingly, the undersigned recommends that defendants' motion for summary

judgment, insofar as it demands dismissal of plaintiff's claims for monetary damages

against defendants in their official capacities, be granted and that such dismissal be with

prejudice.


## C.  Exhaustion

Defendants contend that their motion for summary judgment must be granted because

plaintiff failed to exhaust his administrative remedies through available grievance

procedures.  <u>See</u> Dkt. No. 37-22 at 12-15.  The Prison Litigation Reform Act ("PLRA")

9

requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration. Porter v. Nussle, 534 U.S. 516, 524 (2002); see also Woodford v. Ngo, 548 U.S. 81, 82 (2006). The exhaustion requirement applies " 'to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.' " Mauldin v. Kiff, No. 11-CV-107-A, 2014 W L 2708434, at *4 (W.D.N.Y. June 16, 2014) (quoting Porter, 534 U.S. at 532). Further, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as money damages. Porter, 534 U.S. at 524. To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated. Jones v. Bock, 549 U.S. 199, 218 (2007) (internal citation omitted).

Although the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." Ruggiero v. County of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citation omitted). Until recently, courts in this District followed a three-part test established by the Second Circuit in Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004) to determine exhaustion. Under the test established in Hemphill, a plaintiff's failure to exhaust could be excused if the plaintiff established that his or her failure to exhaust was justified by "special circumstances." Id. However, the Supreme Court of the United States recently held that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." Ross v. Blake, 136 S. Ct. 1850, 1862 (2016). As such, the special circumstances exception previously promulgated by the Second Circuit in Hemphill, is no longer consistent with the statutory

10

requirements of the PLRA.  Williams v. Priatno, 829 F.3d 118, 123 (2d Cir. 2016).

Although the Supreme Court's decision in Ross eliminates the "special circumstances" exception promulgated by Hemphill, courts must still consider the PLRA's "textual exception to mandatory exhaustion."  Ross, 136 S. Ct. at 1858.  Under this exception, courts must determine whether administrative remedies were "available" to a prisoner.  Id.  The Supreme Court identified three circumstances where administrative remedies may be unavailable to a prisoner.  First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates."  Id. at 1859 (citing Booth v. Churner, 532 U.S. 731, 736, 738 (2001)).  "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use."  Id.  Lastly, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  Id. at 1860.

Here, there is no dispute that, at all relevant times, DOCCS had in place a three-step inmate grievance program.  N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5 (2015).  First, the inmate must file a complaint with an inmate grievance program ("IGP") clerk within twenty-one days of the alleged action.  Id. at § 701.5(a)(1).  If the IGP determination is unfavorable to the inmate, the inmate may appeal the IGRC's determination to the facility superintendent within seven calendar days of receipt of the determination.  Id. § 701.5(c)(1).  If the superintendent's determination is unfavorable to the inmate, the inmate may appeal to the Central Office Review Committee ("CORC") within seven days after receipt of the superintendent's determination.  Id. §§ 701.5(d)(i)-(ii).

11

Here, it is undisputed that plaintiff failed to file a grievance at Eastern C.F. related to the July 3, 2014 incident.  See Dkt. No. 37-15; Dkt. No. 44 at 15.  However, plaintiff claims that he filed a grievance at Upstate C.F. in February 2015 related to the July 2014 incident.[10] Dkt. No. 44 at 15.  In response, defendants submitted an affidavit from Sherri Debyah ("Debyah"), the IGP Supervisor at Upstate C.F.  Dkt. No. 45-1.  Debyah avers that she has no record of any grievance related to the excessive force incident in April 2014 at Eastern C.F.  Dkt. No. 45-1 at 2.  Debyah did not provide any documentary evidence supporting her contentions.

The Court is presented with contradictory statements that demonstrate "squarely conflicting accounts" and "give rise to a dispute of fact that cannot appropriately be decided on summary judgment since the matter would require the court to make a credibility determination without the aid of live testimony."  Peak v. Schwebler, 11-CV-0041 (MAD/DEP), 2013 WL 317016, at *5 (N.D.N.Y. Jan. 3, 2013).  Accordingly, it is recommended that defendants' motion for summary judgment, insofar as it raises the affirmative defense of nonexhaustion, be denied.

### D.  Eighth Amendment

Inmates enjoy an Eighth Amendment protection against the use of excessive force and may recover damages for its violation under § 1983.  Hudson v. McMillian, 503 U.S. 1, 9-10 (1992)).  The Eighth Amendment's prohibition against cruel and unusual punishment

---

[10]     Defendants object to plaintiff's assertion claiming that, for the first time in opposition to defendants' motion, plaintiff alleges that he filed a grievance at Upstate C.F.  See Dkt. No. 45 at 4. Defendants further claim that the argument is not supported by the record.  See id.  In light of the fact that defendants failed to address, or even raise, the issue of exhaustion and the grievance process during plaintiff's deposition testimony, the Court is not persuaded by defendants' argument.

precludes the "unnecessary and wanton infliction of pain." <u>Gregg v. Georgia</u>, 428 U.S. 153, 173 (1976); <u>Sims v. Artuz</u>, 230 F.3d 14, 20 (2d Cir. 2000). To bring a claim of excessive force under the Eighth Amendment, a plaintiff must establish both objective and subjective elements. <u>Blyden v. Mancusi</u>, 186 F.3d 252, 262 (2d Cir. 1999).

The objective element is "responsive to contemporary standards of decency" and requires a showing that "the injury actually inflicted is sufficiently serious to warrant Eighth Amendment protection." <u>Hudson</u>, 503 U.S. at 9 (internal citations omitted); <u>Blyden</u>, 186 F.3d at 262. However, "the malicious use of force to cause harm constitute[s][an] Eighth Amendment violation per se" regardless of the seriousness of the injuries. <u>Blyden</u>, 186 F.3d at 263 (citing <u>Hudson</u>, 503 U.S. at 9). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." <u>Hudson</u>, 503 U.S. at 9-10 (citations omitted). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." <u>Sims</u>, 230 F.3d at 22 (citation omitted).

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." <u>Sims</u>, 230 F.3d at 21 (citation omitted). The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" <u>Id.</u> (quoting <u>Hudson</u>, 503 U.S. at 7). In determining whether a defendant acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider: " [1] the extent of the injury and the mental state of the defendant [;] . . . [2] the need for the application of force; [3] the correlation between that need and the amount of force used; [4] the threat

reasonably perceived by the defendants; and [5] any efforts made by the defendants to temper the severity of a forceful response." Scott v. Coughlin, 344 F.3d 282, 291 (2d Cir. 2003) (internal quotation marks and citations omitted).

### 1. **Jeffreys** Exception

Defendants argue that plaintiff's account of the events that transpired on July 3, 2014 should not be credited because it is "inherently inconsistent and implausible." See Dkt. No. 37-22 at 16-20. Defendants also submit that even assuming, for the purposes of this motion, that plaintiff's allegations are true, the level of force exerted was limited and necessary to further a penological interest. See id. at 20-24. Defendants direct the Court to Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005) as authority for granting a motion for summary judgment where the plaintiff relies solely on his own contradictory and incomplete testimony. Dkt. No. 37-22 at 19. Specifically, defendants assert that plaintiff's account of the incident is unsubstantiated by any direct evidence. See id. at 16. "To qualify for application of the Jeffreys exception, a defendant must meet each of the following three requirements: (1) the plaintiff must rely 'almost exclusively on his own testimony''; (2) the plaintiff's testimony must be 'contradictory or incomplete'; and (3) the plaintiff's testimony must be contradicted by evidence produced by the defense." Caldwell v. Gettman, No. 09-CV-580 (DNH/DEP), 2011 WL 1119869, at *6 (N.D.N.Y. Mar. 2, 2012) report and recommendation adopted, No. 09-CV-480, 2012 WL 1119771 (N.D.N.Y. Apr. 3, 2012) (citation omitted).

Here, the Jeffreys exception does not apply. The first factor lends favor to defendants because plaintiff relies solely on his own allegations. However, plaintiff's allegations are not

14

riddled with inconsistencies such that no reasonable juror could believe plaintiff. Moore v.

Casselberry, 584 F. Supp.2d 580, 585 (W.D.N.Y. 2008) ("[J]ust because the plaintiff's claim

is based solely upon his own contradictory and incomplete testimony, that does not

automatically entitle the defendants to summary judgment. The evidence must be such that

no reasonable juror could believe it."). On the second factor, defendants argue that

plaintiff's testimony is inconsistent with the Use of Force Report, Unusual Incident Report, a

memorandum from C.O. A. Mercado to Sgt. W. Sherman ("Sherman"), and a memorandum

from C.O.D. Brundage to Sherman. See Dkt. Nos. 37-2 at 2-5; 37-3 at 2-5; 37-17 at 2;

37-18 at 2; 37-20 at 2; 37-22; 38-1 at 2; and 38-2 at 2.

The Use of Force Report was prepared by Sherman and incorporated statements

prepared by Dubois, Padgett, and Hamberg. Dkt. No. 37-2 at 2-6. The Unusual Incident

Report was prepared by Superintendent Thomas Griffin ("Griffin"). The record does not

contain any certification or affidavit from a person with knowledge authenticating or

supporting the admissibility of the aforementioned reports. As defendants have failed to

provide a foundation for these documents, the documents are not in proper, admissible

form and will not be consider in the context of the motions. See Green v. Morse, No.

00-CV-6533, 2006 WL 2128609, at *1 (W.D.N.Y. May 26, 2006) (the Unusual Incident

Report was considered hearsay because the declarant lacked personal knowledge) (citing

FED. R. EVID. 602); see also Giles v. Rhodes, 94 Civ. 6385, 2000 WL 1425046, at *8

(S.D.N.Y. Sept. 27, 2000) (excluding the Unusual Incident Report based upon Second

Circuit precedent holding that "incident reports and memoranda such as these prepared by

or relying on the testimony self-interested officers have insufficient indicia of trustworthiness

to be admissible under the business records exception.") (citations omitted)).

Even assuming the Court accepted the aforementioned reports and the statements contained therein, plaintiff was not interviewed when the reports were prepared and the reports do not contain a statement from plaintiff that contradicts his account of the events. See Bryant v. Bouvia, No. 9:15-CV-0258 (LEK/ATB), 2017 WL 383356, at *2 (N.D.N.Y. Jan. 27, 2017) (holding that credibility issues did not warrant summary judgment even though the record contained an "Offender Injury Report" because the plaintiff asserted he was not interviewed and never recanted his allegations). Plaintiff has repeatedly and consistently reported that defendants assaulted him without provocation. Indeed, in the section of the Inmate Injury Report entitled "Inmate's Statement," plaintiff wrote: "I was put on the wall to be pat frisk[ed] and the officer push my face to the wall." Dkt. No. 38-1 at 2.

As for the third factor, defendants argue that plaintiff's assault charge amounts to contradictory evidence in support of dismissal of the excessive force claim. Although "assault charges to which [an inmate] pled guilty certainly cast doubt on his claim[,] they do not, however, preclude a reasonable jury from finding that excessive force was used against him on the day in question." Griffin v. Crippen, 193 F.3d 89, 91-92 (2d Cir. 1999). Thus, the assault charge, without more, does not convince the undersigned to conclude that the Jeffreys exception applies.

Defendants also claim that the medical evidence – including plaintiff's medical records and the Inmate Injury Report, both prepared by Hamberg – establishes that plaintiff suffered only "minimal injuries,"[11] which contradicts his claim of more serious injury. Dkt. No. 37-22 at 19. Even if the undersigned were to assume that the documents referenced were in

---

[11]    As discussed supra, these documents are not in admissible form as the record does not contain an affidavit from Hamberg.

admissible form, whether plaintiff's injuries were "minimal" is a material question of fact. Plaintiff claims that his "teeth got kicked out" and that he sustained "black and blue marks" on his legs as a result of being struck with "the sticks."[12] Dkt. No. 37-21 at 33-34. Despite the lack of medical evidence corroborating plaintiff's allegations, such determinations of material facts are better left for a jury to decide.  See, e.g., Lewis v. Johnson, 08-CV-482 (TJM/ATB), 2010 WL 3785771, at *7 (N.D.N.Y. Aug. 5, 2010) (where the medical evidence did not corroborate the plaintiff's claim of injury to his ribs and jaw, the court concluded, because "issues of credibility should not be resolved on a summary judgment motion, this court cannot conclude that no rational juror could find that defendants . . . violated plaintiff's Eighth Amendment rights . . . .") (citation omitted); Dallio v. Sanatamore, 9:06-CV-1154 (GTS/DRH), 2010 WL 125774, at *9 (N.D.N.Y. Jan. 7, 2010) (denying summary judgment due to hesitancy to resolve credibility issues and weighing evidence on summary judgment where the plaintiff alleged that he was repeatedly kicked and punched after he was subdued and restrained by correction officers, despite both evidence showing minor injuries the plaintiff suffered and defendant's contrary evidence); Cicio v. Lamora, 9:08-CV-431 (GLS/DEP), 2010 WL 1063875, at *7-8 (N.D.N.Y. Feb. 24, 2010) (denying summary judgment on excessive force claim despite "seemingly overwhelming" contradictory evidence, including plaintiff's very minor injury).

   The record before the Court does not contain any evidence that plaintiff provided contradictory accounts of the events.  Further, the Supreme Court has "emphasized that the nature of the force applied is the 'core judicial inquiry' in excessive force cases – not

---

[12]    Plaintiff testified that two unidentified officers struck the back of his legs with night sticks. Dkt. No. 37-21 at 28-30.

'whether a certain quantum of injury was sustained.'" <u>Wynter v. Ramey</u>, 11-CV-257, 2013 WL 5465343, at *5 (N.D.N.Y. Sept. 30, 2013) (quoting <u>Wilkins v. Gaddy</u>, 559 U.S. 34, 37 (2010) (per curiam)). Even relatively "minor" injuries sustained have been found sufficient to support an excessive force claim. <u>See</u>, <u>e.g.</u>, <u>Cicio</u>, 2010 WL 1063875, at *7-8 (plaintiff suffered only bruise). Thus, plaintiff need not demonstrate "permanent or severe" injuries in order to maintain his claim, <u>Robinson v. Via</u>, 821 F. 2d 913, 924 (2d Cir. 1987). Accordingly, it is recommended that defendants' motion on this ground be denied.

## 2. De Minimis Force

Viewing the evidence in a light most favorable to plaintiff, there are genuine issues of material fact precluding summary judgment on the excessive force claim, including the level of force used, the extent of plaintiff's injuries, and whether defendants used force in a malicious manner. <u>See</u> <u>Griffin</u>, 193 F.3d at 91 ("[T]he malicious use of force cause harm constitutes an Eighth Amendment violation per se whether or not significant injury is evident."). Addressing first the objective analysis prong, plaintiff testified that his tooth was "knocked out." Dkt. No. 37-21 at 33-34. Plaintiff qualified this statement and testified that he "just took it out" because "[i]t was already coming out of my mouth so I just took it out and threw it in the garbage." <u>Id</u>. Plaintiff also testified that after the incident, his mouth was bleeding, his ribs and legs were "black and blue," and he was experiencing difficulty breathing. <u>Id.</u> at 34, 40. Defendants cite to Hamberg's report and photographs and argue that plaintiff suffered "no injuries other than a small, reddish abrasion on his right shoulder." Dkt. No. 37-22 at 24. Defendants further contend that plaintiff's claims of swelling, bruising,

or copious bleeding are not supported by evidence.[13]  See id.  Even if the Court considers these records, where the issue of "whether [the] plaintiff's injuries [ . . . ] were significant enough to avoid the de minimis label depends on the resolution of a triable issue of fact," summary judgment is not appropriate.  See McCrory v. Belden, No. 01 Civ. 0525, 2003 WL 22271192, at *6 (S.D.N.Y. Sept. 30, 2003) ("Minor injuries suffice for an Eighth Amendment claim, and bruising or equivalent injuries may be found be a reasonable fact-finder to constitute minor rather than de minimis harm.") (citation omitted); see also Webster v. City of New York, 333 F. Supp.2d 184, 197 (S.D.N.Y. 2004) (finding that although the plaintiff's injuries appeared to be minor and a reasonable fact-finder "may well conclude that they do not rise to the level of a constitutional violation," the injuries were not, as a matter of law, de minimis).  Even though medical records do not confirm the injuries which plaintiff contends to have incurred, any or even or no injuries resulting from the events plaintiff described could amount to a per se constitutional violation.  See Baskerville v. Mulvaney, 411 F.3d 45, 48-49 (2d Cir. 2005).  Thus, defendants' argument that plaintiff's injuries were de minimis cannot result in the dismissal of plaintiff's excessive force claims on this motion.

Addressing the subjective prong of the Eighth Amendment analysis, although it is undisputed that defendants were tasked with the safety and order of inmates, there are factual issues regarding whether the use of force was necessary, reasonable or applied in a malicious manner.  For purposes of this motion, the governing law that the evidence must be viewed in the light most favorable to the non-moving party directs the Court to credit plaintiff's account of the events.  See In re Dana Corp., 574 F.3d 128, 152 (2d Cir. 2009)

---

[13]  As discussed supra, Hamberg's records are not in proper, admissible form.

(holding that a court faced with a motion for summary judgment must draw all reasonable inferences in favor of the non-moving party and may not make credibility determinations or weigh the evidence, functions which are reserved to a jury and not a judge) (citing cases). Plaintiff testified that the assault was unprovoked and claims that he was kicked and punched while he was on the ground. Dkt. No. 37-21 at 25-31. If plaintiff's testimony is credited, a reasonable factfinder could find the defendants' actions wanton and malicious. As plaintiff described, the need for force in response to compliant and non-threatening behavior could be deemed malicious. Plaintiff's testimony could establish that the use of force was an unnecessary tactic implemented not to restore or maintain order, but to maliciously assault an inmate for no apparent reason, which could constitute a per se constitutional violation. In addition, "the loss of a tooth is not a de minimis injury." <u>Kilmartin v. Schaffer</u>, 12-CV-1167 (FJS/CFH), 2013 WL 5929447, at *5 (N.D.N.Y. Nov. 1, 2013) (citation omitted). Moreover, the Second Circuit has held that even minor injuries such as scrapes, bumps, and bruises sustained during an arrest can support an excessive force claim. <u>Maxwell v. City of New York</u>, 380 F.3d 106, 109 (2d Cir. 2004).

The competing evidence rests on the credibility of plaintiff on the one hand and defendants on the other. In these circumstances, the governing law that the evidence must be viewed in the light most favorable to the non-moving party directs the Court to credit plaintiff's version of events for purposes of this motion. <u>In re Dana Corp</u>., 574 F.3d at 152 (holding that a court faced with a motion for summary judgment must draw all reasonable inferences in favor of the non-moving party and may not make credibility determinations or weigh the evidence, functions which are reserved to a finder of fact) (citing cases). Accordingly, it is recommended that defendants' motion on this ground be denied.

**E. Qualified Immunity**

Defendants argue that, even if plaintiff's Eighth Amendment claims are substantiated, they are nevertheless entitled to qualified immunity. Qualified immunity generally protects government officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp.2d 211, 229-30 (N.D.N.Y. 2002), aff'd 80 F. App'x 146 (2d Cir. 2003). However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified . . . immunity might still be available . . . if it was objectively reasonable for the public official to believe that his acts did not violate those rights." Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367(2d Cir. 1990) (internal citation omitted)). A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). Only if there is a constitutional violation does a court proceed to determine whether constitutional rights were clearly established at the time of the alleged violation. Aiken, 236 F.Supp.2d at 230.

Addressing defendants' qualified immunity claim, it is well-settled that on July 13, 2014, the Eighth Amendment prohibited law enforcement officers from using excessive force against inmates. See Hudson, 503 U.S. at 9-10. Thus, because a reasonable jury could conceivably accept plaintiff's claim that defendants' use of force was objectively unreasonable, defendants are not entitled to qualified immunity for the alleged Eighth Amendment violation. Accordingly, it is recommended that defendants' motion be denied on this ground.

## F. Cross Motion for Summary Judgment

On January 6, 2017, plaintiff submitted papers in response to defendants' motion for summary judgment. Dkt. No. 40. Plaintiff moved for an award of monetary damages against defendants "mental stress, pain, suffering, putting his life in danger, and unprofessional conduct." Id. at 4. The Court construes the submission as a cross motion for summary judgment. As there are disputed material questions of fact, discussed at length above, it is recommended that plaintiff's cross-motion for summary judgment be denied in all respects.

## III. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 37) insofar as it requests dismissal of plaintiff's claims for monetary damages against defendants in their official capacities be **GRANTED** and that such claims be dismissed; and it is further

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 37) be **DENIED in all other respects;** and it is further

**RECOMMENDED,** that plaintiff's cross motion for summary judgment (Dkt. No. 40) be **DENIED**; and it is

**ORDERED**, that copies of this Report-Recommendation and Order be served on the parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall

22

be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. <u>Roldan v. Racette</u>, 984 F.2d 85, 89 (2d Cir. 1993) (citing <u>Small v. Secretary of Health and Human Services</u>, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

**IT IS SO ORDERED.**

    Dated: June 16, 2017
        Albany, New York

Christian F. Hummel
U.S. Magistrate Judge