**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

MELVIN BROWN

                    Plaintiff,

    v.                                   No. 9:15-CV-1515
                                          (LEK/CFH)

S. DUBOIS, et al.,

                    Defendants.

---

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| Boies, Schiller & Flexner LLP<br>30 South Pearl Street, 11th Floor<br>Albany, New York 12207<br>Attorneys for plaintiff | ROBERT C. TIETJEN, ESQ. |
| New York State Attorney General<br>The Capitol<br>Albany, New York 12224<br>Attorneys for defendants | SHANNAN COLLIER KRASNOKUTSKI, ESQ.<br>MELISSA A. LATINO, ESQ. |

**REPORT-RECOMMENDATION AND ORDER**[1]

    In his pro se complaint plaintiff Melvin Brown asserts claims arising out of an incident which occurred at the Eastern Correctional Facility ("Eastern C.F.") on July 3, 2014. Dkt. No. 1 ("Compl."). The only claim remaining in this action is plaintiff's allegation Plaintiff's that defendants Dubois and Padgett subjected him to excessive force by in violation of his Eighth Amendment rights. Dkt. No. 58. In answering the complaint, defendants pleaded, inter alia, the affirmative defense that plaintiff failed to exhaust his administrative remedies.

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Dkt. No. 23 at 3.

On June 26, 2017, this Court issued a Report-Recommendation and Order which held, among other things, that the issue of exhaustion of administrative remedies involves an issue of fact which cannot be resolved without a hearing. Dkt No. 56. Plaintiff filed objections to the Report-Recommendation and Order. Dkt. No. 57. The Report-Recommendation and Order was adopted in its entirety by Order of Senior United States District Court Judge Lawrence Kahn, dated July 12, 2017. Dkt. No. 58.

On July 14, 2017, defendants filed a letter motion requesting that evidentiary hearing be conducted on the issue of exhaustion. Dkt. No. 59. In a Text Order dated July 18, 2017, Judge Kahn granted that letter motion and referred the matter to the undersigned to conduct an exhaustion hearing. Dkt. No. 60. On August 16, 2017 this Court issued a Text Order appointing pro bono counsel to represent plaintiff at the exhaustion hearing.[2] Dkt. Nos. 61, 62. An exhaustion hearing was conducted on October 30, 2017. At the close of that hearing the Court reserved decision. See Dkt. No. 73 ("Hr'g Tr.") at 80-82. Following the exhaustion hearing, plaintiff filed proposed findings of fact and a memorandum of law. Dkt. No. 77. Defendants have also filed proposed findings of fact and conclusions of law. Dkt. No. 76.

**I. Discussion**

**A. Relevant Legal Standards**

**1. Exhaustion**

---

[2] The Court would like to thank pro bono counsel Robert C. Tietjen, Esq. for his diligent efforts in representing plaintiff relating to the exhaustion hearing.

Under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C.§ 1997e(a), an inmate must exhaust all administrative remedies prior to bringing any suit challenging prison conditions, including federal civil rights cases. Porter v. Nussle, 534 U.S.516,524(2002) ; see also Woodford v. Ngo, 548 U.S. 81,83 (2006). This exhaustion requirement applies to all prison condition claims. See Porter, 534 U.S. at 532. "[A]ny deprivation that does not affect the fact or duration of the prisoner's overall confinement is necessarily a condition of that confinement." Jenkins v. Haubert, 179F. 3d 19,28 (2d Cir. 1999). The exhaustion requirement also applies even if the administrative grievance process does not provide all the relief requested by the inmate. See Porter, 534 U.S. at 524.

Exhaustion for an inmate in the custody of the New York State Department of Corrections and Community Services ("DOCCS") is generally achieved through the Inmate Grievance Program ("IGP"). See N.Y.C.R.R.. title 7,§ 701.1,et seq. (2012). Allegations of staff harassment are subject to an expedited procedure whereupon the complaint is first reviewed by the superintendent and only if it is not a bona fide claim will be returned to the IGP for normal processing. See N.Y.C.R.R., title 7, §701.8 (2012). Included within the IGP's exhaustion requirement is the prerequisite that the inmate must file an appeal with the Central Office Review Committee ("CORC") and receive a response from the CORC before filing a federal lawsuit. See Torres v. Carry, 672 F. Supp.2d 338, 344 (S.D.N.Y. 2009); see also N.Y.C.R.R., title 7 § 701.5(d)(2)(ii)(2012) ("The CORC shall review each appeal, render a decision on the grievance, and transmit its decision . . . within 30 calendar days"). Disagreement with the superintendent's decision in the expedited review process also requires an appeal to the CORC. See N.Y.C.R.R., title 7,§701.8-(g)-(h); see also Espinal v. Goord, 588 F. 3d 119,125 (2d Cir. 2009) (explaining IGP and the expedited procedure for

harassment claims and its appeal mechanism through the CORC). Exhaustion must precede the filing of a lawsuit. See Neal v.Goord, 267 F. 3d 116,122 (2d Cir. 2001) ("subsequent exhaustion after suit is filed is therefore insufficient."), abrogated in part on other grounds by Porter, 534 U.S. 526.

Although administrative remedies generally must be exhausted, a prisoner need not exhaust remedies if they are not "available." Ross v. Blake, __U.S.__ ,136 S. Ct. 1850, 1855 (2016). "First, an administrative remedy may be unavailable when 'it operates as a simple dead end-with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Williams v. Priatno, 829 F. 3d 118,123 (2d Cir. 2016) (quoting Ross, 136 S. Ct. at 1859). "Second,' an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. "In other words,' some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." Id. at 123-24 (quoting Ross, 136 S. Ct. at 1859). "Third, an administrative remedy may be unavailable' when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 124 (quoting Ross, 136 S. Ct. at 1860).

### 2. **The Inmate Grievance Process**

New York State law provides a three tier inmate grievance procedure which is applicable to Plaintiff's claims. See N.Y. Correct. Law §139; N.Y.C.R.R., title 7, § 701.1 et seq.[3]  Where the grievance involves allegations of employee excessive force, as is alleged

---

[3] The Rules and Regulations are commonly known as Directive 4040, which is defendants' exhibit D-1.

by Plaintiff, there is an expedited administrative process. N.Y.C.R.R. title 7,§ 701.8. In such cases, the superintendent of the facility is required to order an investigation and render a decision within twenty-five (25) days . Id. §701 (a)-(f).  If the superintendent fails to respond within the required twenty-five (25) day time limit, the inmate may appeal his grievance to the CORC. The inmate appeals to CORC by filing a Notice of Decision to Appeal (Form #2133) with the inmate grievance clerk.  Id. § 701.8 (g). If an inmate is moved to another facility while the grievance is pending, he is required to mail the signed appeal back to the IGP Supervisor at the facility where the grievance was originally filed. Id. § 701.6(h)(2). The Second Circuit has long recognized this procedure as an "available remedy" for purposes of the PLRA. See Hall v. County of Saratoga, No. 10-CV-1120 (NAM/CFH), 2013 WL 838284, at *1-2 (N.D.N.Y. Mar. 6 , 2013).[4]

### B. **Exhaustion Hearing**

On October 30, 2017 the Court conducted an exhaustion hearing. As their first witness, defendants called Rachel Seguin, the assistant director of the Inmate Grievance Program. See Hr'g Tr. at 4.  Ms. Seguin is responsible for maintaining records regarding appeals which are sent to CORC as well as maintaining daily operations at CORC. Id.  Ms. Seguin testified that CORC is the final administrative appellate level for the IGP. Id. at 4-5. The IGP is summarized in DOCCS directive 4040. Id. at 7.  An inmate may file a grievance within twenty-one days of an alleged occurrence. Id. at 9.  An inmate may request an extension of the time by which a grievance must be filed of up to forty-five days from the

---

[4] Unpublished decisions cited herein will be provided to plaintiff with his copy of the Report-Recommendation and Order.

date of the alleged occurrence based upon "mitigating circumstances." Id. If a grievance is rejected as untimely filed, an inmate may file a new grievance challenging that decision. Id. at 12.

There are certain procedures which apply to inmates housed in the Special Housing Unit ("SHU"). Hr'g Tr. at 12. Inmates in the SHU are limited in the type of personal property and state-issued property which they are allowed to have in their cell. Id. An inmate who is housed in the SHU may file a grievance using a grievance form or a plain piece of paper. Id. The grievance forms and plain paper are available from the supply cart which goes around the SHU on a daily basis. Id. There are also pens and envelopes available on the supply cart. Id. An inmate may submit a grievance during the mail pickup which occurs once a day. Id. The grievance may also be given to the grievance supervisor during rounds. Id. The IGP supervisor makes rounds at least once a week. Id. at 24.

Ms. Seguin testified that, based upon a review of DOCCS' locator system, plaintiff was housed at the Eastern Correctional Facility ("Eastern") as of July 1, 2014. Hr'g Tr. at16. On July 9, 2014. he was transferred to the Green Haven Correctional Facility ("Green Haven"). Id. He returned to Eastern on July 14, 2014. He remained at Eastern until he was transferred to the Upstate Correctional Facility ("Upstate") on September 11, 2014. Id. Ms. Seguin searched CORC's records for any appeals plaintiff filed with CORC. Id. at 26. She found appeals plaintiff filed with CORC before 2014 and after 2014. Id. at 27. Ms. Seguin did not find any appeals filed by Plaintiff during 2014. Id.

On cross-examination, Ms. Seguin testified that inmates housed in SHU do not automatically receive writing materials or a pen; an inmate must specifically ask a corrections officer to be given a pen and paper. Hr'g Tr. at 20. If that request is not

complied with, an inmate has no ability to obtain a pen or writing materials. Id. at 23. If a grievance was not filed for any reason, there will be no record of an appeal to CORC. Id.

As their next witness, defendants called Sherri Debyah, the IGP supervisor at Upstate. Hr'g Tr. at 29. Ms. Debyah's duties include overseeing the filing of grievances, the processing of grievances in accordance with directive 4040 and performing daily rounds. Id. She also supervises the inmate clerks who work in the grievance office. Id. Ms. Debyah testified that an inmate who is housed in the SHU at Upstate may obtain a grievance form and a writing utensil from the supply cart. Id. at 33. In order to obtain such supplies, an inmate must be at his cell door with the light on when the corrections officer doing rounds with supply cart passes by. Id. Rounds are performed by the officers on the 6:00 A.M. to 2:00 P.M. shift. Id. The IGP Supervisors at Upstate complete weekly rounds on each of the four SHU blocks. Id. at 34. The Supervisors will stop and speak to any inmate who calls out to them during rounds. Id. A Supervisor will also speak to inmate to see if a grievance can be informally resolved. Id.

Ms. Debyah further testified that Upstate follows the time frames set forth in Directive 4040 in determining if a grievance has been timely filed. Hr'g Tr. at 33. The IGP uses the program Microsoft Access to track inmate grievances which are filed at Upstate. Id. at 36. Ms. Debyah searched that system and did not find any grievances plaintiff filed while at Upstate. Id. Ms. Debyah conducted a search for any correspondence directed to plaintiff. Id. at 37. She found a memo dated January 5, 2014 from S. Woodward, Inmate Grievance Supervisor, to plaintiff. Id. The memo advised plaintiff that his grievance relating to an occurrence on July 3, 2014 was being returned to him as it was filed well beyond the forty-five-day time limit set forth in Directive 4040, Section 701.6(g)(1)(i)(a). Id. The memo

advised plaintiff that he could file a new grievance challenging the determination that his grievance was untimely filed. Id. Ms. Debyah testified that plaintiff did not file a grievance challenging that determination. Id.

Defendants next called Anthony Black, the Inmate Grievance Program supervisor at Eastern. Hr'g Tr. at 44. Mr. Black has also been the IGP supervisor at a number of other correctional facilities. Id. Mr. Black testified that grievances filed at Eastern are handled in accordance with the provisions of Directive 4040. Id. at 46. Inmates in the SHU at Eastern may obtain a grievance form from the supply cart in the SHU. Id. at 46. The supply cart also contains pens, paper and envelopes. Id. at 47. An inmate may use a separate sheet of paper to file a grievance rather than a grievance form. Id. Once an inmate in the SHU has completed his grievance, he places it into an envelope and seals the envelope. Id. A corrections officer collects the grievances and forwards them to the IGP. Id. Mr. Black has accepted grievances from inmates for filing during his weekly rounds in the SHU. Id. at 48.

The Eastern IGP uses a paper clerk's log as well as an Excel spread sheet to track grievances. Hr'g Tr. at 48. Mr. Black conducted a search of the grievance clerk's log for the period of July 2014 through September 2014. Id. He did not find any grievances plaintiff filed during that time. Id. at 50. In July 2014, one SHU inmate at Eastern filed a grievance. Id. In August 2014, two grievance were filed by inmates housed in the SHU. Id. In September 2014, three grievances were filed by inmates housed in the SHU at Eastern. Id. at 51. Mr. Black testified that he is unaware of any reason why the grievance program at Eastern would not have been available to plaintiff at that time. Id.

Defendants called Lauren Wonsang as their final witness. Hr'g Tr at 55. Ms. Wonsang is the IGP supervisor at the Green Haven Correctional Facility ("Green Haven").

Id. She is responsible for the receipt, coding, titling, and investigation of grievances filed at that facility. Id. Ms. Wonsang testified that plaintiff was housed at Green Haven from July 9, 2014 to July 14, 2014. Id. at 56. There are mental health observation cells at Green Haven. Id. An inmate under mental health observation has the ability to file a grievance by speaking to a supervisor, corrections officer, or mental health professional who would advise the IGP of the potential grievance. Id. at 57. A representative from the IGP would then go to the mental health observation cell to assist the inmate in filing a grievance. Id. at 57-58.

Ms. Wonsang testified that the IGP at Green Haven follows the time frames for the filing of a grievance set forth in Directive 4040. Hr'g Tr. at 58. Thus, an inmate has twenty-one days from an occurrence to file a grievance. Id. That time period may be extended to forty-five days if the inmate requests such an extension. Id. .Ms. Wonsang has never accepted for filing a grievance filed outside of those time frames. Id.

Green Haven uses the computer program Microsoft Access to track inmate grievances. Hr'g Tr. at 59. Ms. Wonsang conducted a search of grievances filed by inmates in July 2014. Id. She did not find any grievances from plaintiff filed during that time period. Id. Ms. Wonsang found grievances filed by other inmates at Green Haven during that time frame. Id.

On cross examination, Ms. Wonsang testified that an inmate in a mental health cell is not allowed to have writing utensils in his cell. Hr'g Tr. at 62. The procedure she described wherein an IGP supervisor will provide an inmate in a mental health cell with assistance in filing a grievance is not reflected in Directive 4040. Id.

Plaintiff was the only other witness to testify at the October 30, 2017 hearing. Hr'g

Tr. at 64. Plaintiff testified that in July 2014, he was housed at Eastern. Id. Plaintiff contends that on July 3, 2014, an incident occurred during which he was assaulted by corrections officers. See Compl. After being examined by medical personnel, he was taken to the SHU. Id. When plaintiff arrived at the SHU, he was given sneakers and socks, but he was not given paper or writing utensils. Hr'g Tr. at 66. Plaintiff was in Eastern's SHU from July 3, 2014 to July 9, 2014. Id. On three or four occasions he requested that he be provided with a grievance form. Id. at 68. He also requested grievance forms when the supply cart passed by his cell. Id. On those occasions, he was told that there were no grievance forms on the supply cart but that an effort would be made to obtain more grievance forms. Id. Plaintiff was never given a grievance form. Id.

On July 9, 2014, Plaintiff was transferred to Green Haven where he was housed on the mental health unit. Hr'g Tr. at 69. Plaintiff was feeling depressed at that time. Id. at 70. He did not try to file a grievance while at Green Haven. Id. On July 9, 2014, plaintiff returned to Eastern and was placed in the SHU. Id. at 71. There were no writing materials in his cell. Id. On a few occasions, plaintiff requested a grievance form but was never provided them. Id. at 72.

Thereafter, plaintiff was transferred to Upstate where he was placed in a two-person cell in the SHU. Hr'g Tr. at 73. He was not given any paper or writing materials when he arrived at Upstate. Id. While at Upstate, plaintiff requested a grievance form so that he could file a grievance regarding the July 3, 2014 incident which occurred at Eastern. Id. at 73. He was given a grievance form and writing utensils. Id. Plaintiff filed a grievance at Upstate regarding the July 3, 2014 incident at Eastern. Id. He received a letter dated January 5, 2015 advising him that the grievance was being returned because it was filed

more than forty-five days after the July 3, 2014 incident. Id. Plaintiff did not file a new grievance regarding the January 5, 2015 determination he "didn't know no [sic] more about the grievance process. They said my grievance was too old. So it didn't make no [sic] sense for me to continue to file." Id. at 75.

On cross examination, plaintiff testified that he asked a number of different correction officers at Eastern for a grievance form. Hr'g Tr. at 75. He does not recall any of those officers' names and cannot describe them. Id. He never asked for a plain piece of paper. Id. Plaintiff further testified that he never saw a grievance supervisor making rounds at Eastern. Id. at 76. Plaintiff never asked to speak to a grievance supervisor at Eastern. Id.

Plaintiff is familiar with certain aspects of the grievance procedure. Hr'g Tr. at 77. Plaintiff testified that he has filed grievances in the past. Id. He knows that an inmate may file a grievance using a plain piece of paper. Id.

### C. **Burden of Proof**

The failure to exhaust administrative remedies is an affirmative defense which must be raised by the defendants. See Jones v. Brock, 549 U.S.199, 216 (2007); Levine v. Greece Cent Sch. Dist., 353 F. App'x 461, 463 (2d Cir. 2009). As such, it is the defendants' burden to establish that the plaintiff failed to meet the exhaustion requirements. See Johnson v. Testman, 380 F.3d 691, 695 (2d Cir. 2004); Smith v. Kelly, 985 F. Supp. 2d 275, 285 (N.D.N.Y. 2013).

It is for the Court to determine issues of law and credibility in deciding whether an inmate has complied with the exhaustion requirements of the Prison Litigation Reform Act ("PLRA"). See Messa v. Goord, 652 F3d 305 (2d Cir. 2001). Exhaustion, even where the

facts are disputed, is a matter of law for the Court to decide. See Engles v. Dougherty, 9:14-CV-1185 (TJM/ATB), 2017 WL 6466309, at *5 n.4 (N.D.N.Y. Aug. 22, 2017).

### D. **Analysis**

The Court had the unique ability to observe the witnesses and evaluate their credibility during the exhaustion hearing. The Court finds credible the testimony of defendants' witnesses that in July 2014 there was an inmate grievance program in place at Eastern which complied with Directive 4040. That grievance program was available to inmates in the general population as well as inmates in the SHU. An inmate in the SHU could obtain a grievance form and writing utensil by requesting one from the officer who brought the supply cart by on a daily basis. A inmate may also file a grievance on a plain piece of paper. A grievance form could also be obtained from an inmate grievance supervisor during the supervisors weekly rounds.

The Court finds the credible the testimony of Lauren Wonsang stating that plaintiff was housed at Green Haven from July 9, 2014 to July14, 2014. Hr'g Tr. at 50. Plaintiff was housed in a mental health observation cell. Id. at 56. Inmates in mental health observation cells may file a grievance by speaking to a supervisor, corrections officer or mental health professional who would advise the IGP supervisor of the potential grievance. Someone from the IGP would go to the mental health observation cell to speak to the inmate and assist him in filing a grievance. Id. at 57-58. Plaintiff testified that he did not attempt to file a grievance while housed at Green Haven. Id. at 70. Plaintiff returned to Eastern on July 14, 2014. Id. at 16. He remained at Eastern until he was transferred to Upstate on September 11, 2014. Id. The Court finds credible the testimony of defendants' witness Rachel Seguin

stating that, during the relevant period of time, Eastern had a grievance program which at all times was available to plaintiff. Id. at 4-24. The Court would note that during the period that plaintiff was housed in the SHU at Eastern, six grievances were filed by other inmates in the SHU at Eastern. Id. at 51.  This supports defendants' argument that the grievance system was available to plaintiff as it was clearly available to other inmates house in SHU at the same time as plaintiff.

The undersigned did not find credible the testimony plaintiff's testimony stating that he was prevented from filing a grievance at Eastern.  Although plaintiff testified that he asked different officers for a grievance form, he could not provide a physical description or the names of any of those correction officers.  Hr'g Tr. at 75-76. The undersigned also finds plaintiff's testimony that he never saw a grievance supervisor while he was housed in Eastern's SHU to be without merit.

Plaintiff was transferred to Upstate on September 11,2014.  Hr'g Tr. at  76.  While at Upstate he filed a grievance regarding the July 3, 2014 incident at Eastern.  Id. at 73. Although plaintiff received a letter dated January 5, 2015 returning that grievance as having been untimely filed, plaintiff did not file a new grievance regarding the return of his earlier grievance.  Id.  Plaintiff explained that he did not file a new grievance because it did not make "sense" to him to file a new grievance and he "thought that was it."  Id. at 75. However, plaintiff testified that he is familiar with the grievance process, knows he can file a grievance on a plain sheet of paper, and has filed grievances before.  Hr'g Tr. at 77. Further, Ms. Seguin credibly testified that plaintiff properly filed grievance appeals to CORC relating to other matters both before the 2014 incident and after the 2014 incident.  Id. at 27 In addition, Ms. Debyah credibly testified that the January 5, 2014 letter from S. Woodward,

-13-

Inmate Grievance Supervisor, informed plaintiff that he could file a new grievance relating challenging the determination that his grievance was untimely filed.  Id. at 37.

### III.  Conclusion

Based upon the credible testimony set forth at the October 30, 2017 exhaustion hearing, the undersigned finds the defendants have met their burden of proof on their affirmative defense that plaintiff failed to exhaust his administrative remedies as required by the PLRA.  **WHEREFORE**, for the reasons stated herein, it is HEREBY

**RECOMMENDED**, that plaintiff Melvin Brown's complaint (Dkt. No. 1) be **DISMISSED** in its entirety without prejudice based upon his failure to comply with the exhaustion requirements of 42 U.S.C. § 1997e(a); and it is

**ORDERED**, that the Clerk of the Court serve this Report-Recommendation and Order on parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have FOURTEEN (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Dated: April 10, 2018
   Albany, New York

Christian F. Hummel
U.S. Magistrate Judge